TCG

FILED IN OPEN COURT
ON _____ 6/18/24 BRt
Peter A. M... ..., Clerk
US Distr...
.astern Di... ... NC



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:24-CR-194

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | INDICTMENT |
| | ) | |
| TASHA LANET HOLLAND-KORNEGAY | ) | |
| | ) | |

The Grand Jury charges the following:

## INTRODUCTION

### A. The Defendant, Entities, and Relevant Persons

1.     At all times material to this Count, TASHA LANET HOLLAND-KORNEGAY (hereinafter "HOLLAND-KORNEGAY") defendant herein, was an individual who created and operated certain mental and behavioral health companies that billed the North Carolina Medicaid program ("NC-Medicaid") in the Eastern District of North Carolina and elsewhere.

2.     HOLLAND-KORNEGAY was a licensed clinical mental health counselor (LCMHC) who was licensed in North Carolina on September 5, 2008. HOLLAND-KORNEGAY was also licensed as a clinical mental health supervisor on February 28, 2014.   HOLLAND-KORNEGAY first registered as a NC-Medicaid provider through NC-Medicaid's billing system no later than December 15, 2008.

3.     Our Treatment Center, PLLC ("OTC") was a North Carolina corporation

formed on November 24, 2009, in the Eastern District of North Carolina. HOLLAND-KORNEGAY was its organizer and only listed member. OTC has been a provider with NC-Medicaid since July 20, 2011.

4.      Partners Against Sexually Transmitted Diseases ("Partners") is a North Carolina non-profit corporation formed on March 31, 2005, in the Eastern District of North Carolina. W.K., is its organizer and is the President of the corporation as of July 10, 2019. Between July 7, 2019, and August 27, 2019, HOLLAND-KORNEGAY caused Partners to file applications with NC-Medicaid to be a provider of behavioral health services within North Carolina.

5.      HOLLAND-KORNEGAY employed several other providers, through OTC and Partners, that were licensed as Licensed Professional Counselors, Licensed Professional Counselor Associates, Licensed Clinical Addiction Specialists, Licensed Clinical Addiction Specialist Associates, Licensed Clinical Mental Health Counselors, Licensed Mental Health Counselor Associates, Licensed Clinical Social Workers and Licensed Clinical Social Work Associates.   This Indictment pertains to billings to NC-Medicaid by OTC and Partners for services allegedly rendered by HOLLAND-KORNEGAY and therapists that worked for her at OTC and Partners.

### B. The Medicaid Program

6.      Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., (the "Act") establishes the Medicaid Program. The North Carolina Medicaid Program is a state-administered health care benefit program aided by federal funds and designed to

provide medical assistance for low-income families and children that reside in North Carolina.

7.     Under the Act, each state has a single state agency to administer the Medicaid program for the benefit of recipients within its borders. In North Carolina, the Division of Health Benefits ("DHB"), which is within North Carolina's Department of Health and Human Services ("DHHS"), administers the Medicaid program. The North Carolina Medicaid program, administered through DHB is referred to herein as "NC-Medicaid."

8.     An individual qualified to receive Medicaid's publicly funded assistance is referred to as a "recipient." For recipients, Medicaid functions like a medical insurance plan, which defrays the cost of receiving covered and medically necessary services. Each Medicaid recipient is assigned a unique identification number by Medicaid and can be identified by reference to their unique identification number.

9.     Under Medicaid, a "provider" is an individual (rendering provider) or entity (billing providers) that furnishes Medicaid services to recipients under a provider agreement with the Medicaid Agency. In North Carolina, every provider who participates in NC-Medicaid must apply for and be assigned a unique provider number by DHB. Rendering providers and billing providers must also obtain a federal identification number, known as a National Provider Identifier or NPI number. All NC-Medicaid rendering providers and billing providers must certify that they will only bill Medicaid for medically necessary services that they actually perform.

10.     For a provider to obtain reimbursement from the Medicaid Program for providing services to a Medicaid recipient, the provider electronically submits a claim to NC-Medicaid, containing, among other things, the provider's name, address, and provider NPI number, the patient's name and Medicaid identification number, the date of service, a brief description of the charges, the provider's signature, and date of billing.  For direct billings to NC-Medicaid, claims for services are electronically transmitted through a program known as "NC Tracks."

11.     NC-Medicaid utilizes contractors, known as "fiscal agents," to receive, process, and pay Medicaid claims.  Since April of 2018, NC-Medicaid has utilized General Dynamics Information Technology (GDIT) as its fiscal agent.  Prior to that time, between November 30, 2015, and April 2, 2018, NC-Medicaid utilized CSRA as its fiscal agent.  GDIT and CSRA are referred to collectively herein as the "Fiscal Agents."

12.     Each claim that a provider submitted to a fiscal agent was considered a separate claim under the provider's agreement with NC-Medicaid.  NC-Medicaid providers were entrusted to only submit claims to the fiscal agents for services that were actually rendered by the provider.  As fiduciaries, providers were not required to submit underlying medical records and documentation to the fiscal agents in support of claims for payment.  As such, in receiving and processing claims, the fiscal agents relied upon representations made by providers concerning the duration and nature of services allegedly rendered to recipients.

13.     Although underlying medical records were not submitted or reviewed by NC-Medicaid prior to payment, each provider was obligated, under Medicaid rules and agreements, to keep and maintain detailed medical records concerning the billed services.  Providers were also obligated to make these records available for inspection by NC-Medicaid for the purposes of conducting audits.  To the extent billed services were not supported by underlying medical record documentation, NC-Medicaid could recoup from the provider amounts paid for undocumented or inadequately documented services.

14.     At no time were providers authorized to bill NC-Medicaid for services that were not in fact rendered, for services not rendered as billed, or to fabricate records concerning billed services.

15.     In addition, for behavioral health services, also known as mental health services, Medicaid rules require that a recipient must have a diagnosis reflecting the need for treatment. All covered services must be medically necessary for meeting the specific needs of the recipient.

16.     As an alternative to direct fee-for-service billing through NC Tracks, NC-Medicaid also includes a managed care structure consisting of Prepaid Health Plans (PHPs).  In Medicaid managed care, DHHS remains responsible for all aspects of NC-Medicaid but delegates the direct management of certain health services, to include mental health services, to PHPs. The PHPs assume financial risk through capitated contracts, that include a fixed amount of money per patient per unit of time, and contract with providers to provide services for beneficiaries.  Claims for these services

are submitted directly to the PHP, as opposed to being submitted through NC Tracks, and are paid by and through the PHP. The claim generally includes, but is not limited to, the date of the alleged service, the Medicaid Identification Number of the beneficiary, the nature of the service rendered, and the provider number or federally issued NPI number. As used herein, the term "NC-Medicaid" includes services billed to and paid by a PHP.

17. NC-Medicaid, including any claims paid directly or through a PHP, is a "health care benefit program," as defined in Title 18, United States Code, Section 24(b).

## C. Billing and Documentation Fraud Upon NC-Medicaid

18. Beginning at a time unknown, but no later than January 2017 and continuing through at least June 2023, both dates approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the defendant, HOLLAND-KORNEGAY, engaged in a scheme to defraud NC-Medicaid by submitting false claims for behavioral health services, primarily psychotherapy, that were never provided, or that were not provided as billed, in order to obtain money that was not owed. The scheme included the creation and maintenance of false records purporting to document billed psychotherapy services allegedly rendered by HOLLAND-KORNEGAY and therapist employees of OTC and Partners.

19. HOLLAND-KORNEGAY tasked employees of OTC and Partners to locate and meet with refugees for the purposes of soliciting their patronage with OTC and Partners. The refugees approached on behalf of OTC and Partners were often

indigent and in need of various forms of time-consuming assistance to maintain daily social welfare in the United States. By way of example, and not by way of limitation, the refugees often needed assistance with reading and understanding mail; understanding the American legal system; assistance with English as a second language; transportation to grocery stores, the Division of Motor Vehicles, and other appointments. Such forms of social assistance, collectively referred to herein as "social needs" did not constitute "psychotherapy" within the Medicaid program.

20. Despite OTC and Partners principally billing Medicaid for psychotherapy and related services, HOLLAND-KORNEGAY and others, primarily enticed refugees to sign up with OTC and Partners based upon offers of assistance with social needs. Even though Medicaid would not compensate OTC or Partners for time spent attending to the social needs of the refugees, HOLLAND-KORNEGAY and others collected Medicaid Identification Numbers and other personally identifiable information ("PII") from the refugees. Often, HOLLAND-KORNEGAY and others would collect Medicaid information for all members of a household. This information was then later utilized by OTC and Partners to bill NC-Medicaid exclusively for psychotherapy and related evaluations.

21. HOLLAND-KORNEGAY did not compensate employees of OTC and Partners for the full amount of time that they spent attending to the social needs of the refugees. Instead, HOLLAND-KORNEGAY would only compensate therapists in the form of a percentage of each hour of psychotherapy services that they purported to provide to the refugees. Since NC-Medicaid authorized payment for no more than

an hour of psychotherapy services to one person on any given day, this often resulted in HOLLAND-KORNEGAY and others working for several hours in a day tending to the social needs of the refugees, without the ability to be lawfully compensated for their time. Nevertheless, HOLLAND-KORNEGAY directed employees to attend to the social needs of the refugee client population.

22.     HOLLAND-KORNEGAY and other therapists working for OTC and Partners, created materially false documentation to account for the time that they spent servicing the social needs of the refugee clients, causing such time to be documented as psychotherapy services. By way of example, four hours spent assisting a refugee with social needs on one day would be billed to NC-Medicaid and documented in clinical psychotherapy notes as four separate one-hour psychotherapy sessions, spread across four days; even though such psychotherapy did not occur as documented and billed. In another example, time spent with one member of a refugee family on a given day would be billed to NC-Medicaid and documented in clinical psychotherapy notes as time spent conducting separate psychotherapy sessions with multiple family members in the same household, across multiple dates; even though such psychotherapy did not occur as documented and billed.

23.     Likewise, the clinical therapy notes drafted by HOLLAND-KORNEGAY and others, did not truly reflect the specific interactions and occurrences with a given refugee client on a given day. HOLLAND-KORNEGAY and others generally excluded information about the social services that were provided to the refugee clients from the clinical psychotherapy notes. Instead, HOLLAND-KORNEGAY and

others included language in the notes that made it appear as though a one-hour psychotherapy session had occurred, including notations regarding progress toward psychotherapy-related goals.

24.    In some instances, HOLLAND-KORNEGAY and other therapists did not draft a clinical psychotherapy note near in time to when OTC and Partners billed NC-Medicaid for the psychotherapy services allegedly rendered.  Sometimes months later, HOLLAND-KORNEGAY and others would draft false notes to justify these previously billed services.

25.    Based upon the billing and documentation practices described above, significant quantities of clinical psychotherapy notes drafted by HOLLAND-KORNEGAY and others, were false.

26.    After billing NC-Medicaid, either through NC Tracks or through PHPs, including but not limited to Carolina Complete Health, WellCare, and Healthy Blue dba Blue Cross Blue Shield of NC, in accordance with the scheme described above, HOLLAND-KORNEGAY received substantial payments from NC-Medicaid for psychotherapy services allegedly rendered by HOLLAND-KORNEGAY and other therapists, even though the documentation to support such services was often false. HOLLAND-KORNEGAY retained a portion of the Medicaid reimbursements for such billed services and paid the therapists a percentage of each hour of psychotherapy billed in their names.

## COUNTS 1-15

27.     Paragraphs **1** through 26 are incorporated by reference as though fully set forth in these Counts.

28.     In some instances, including but not limited to those specified in the following table, HOLLAND-KORNEGAY billed and caused NC-Medicaid to be billed for psychotherapy services allegedly rendered to various refugees and their family members by HOLLAND-KORNEGAY herself.  In fact, the refugees did not receive the billed psychotherapy services as billed and documented.  In some cases, services were billed to NC-Medicaid without any documentation to support the billed psychotherapy services.

29.     Therefore, beginning at an exact time unknown, but no later than January 2017, and continuing to a time unknown, but no earlier than June 2023, in the Eastern District of North Carolina and elsewhere, the defendant, HOLLAND-KORNEGAY, knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of NC-Medicaid, a health care benefit program as defined in Title 18, United States Code, Section 24(b),  in connection with the delivery of and payment for the health care benefits and services specified in the following chart:

| COUNT | PATIENT INITIALS | BILLING PROVIDER | DATES OF ALLEGED PSYCHOTHERAPY SERVICES | AMOUNT PAID BY NC-MEDICAID |
|---|---|---|---|---|
| 1 | A.F. | OTC | 7/15/2019-7/6/2021 | $307.94 |
| 2 | Ha.F. | OTC & Partners | 7/12/2019-6/22/2020 | $408.52 |
| 3 | He.F. | OTC & Partners | 4/3/2020-7/15/2021 | $590.46 |
| 4 | R.F. | OTC | 7/8/2021-8/18/2021 | $182.97 |
| 5 | F.A. | OTC | 10/1/2019-10/4/2019 | $162.53 |
| 6 | Mah.A. | OTC | 9/29/2019-10/8/2019 | $317.67 |
| 7 | Man.A. | OTC | 10/7/2019-10/17/2019 | $317.67 |
| 8 | Mo.A. | OTC | 10/2/2019-10/25/2019 | $392.24 |
| 9 | Z.A. | OTC | 7/1/2019-10/15/2019 | $466.81 |
| 10 | A.A. | OTC | 7/19/2021-7/26/2021 | $162.52 |
| 11 | H.A. | OTC | 7/4/2021-10/22/2022 | $2,749.39 |
| 12 | R.A. | OTC & Partners | 5/11/2020-7/20/2021 | $352.38 |
| 13 | S.B. | Partners | 6/10/2021-6/20/2021 | $150.58 |
| 14 | N.T. | Partners | 3/1/2021-6/30/2021 | $231.15 |
| 15 | Z.T. | Partners | 5/2/2021-6/30/2021 | $234.87 |

Each row in the foregoing table constituting a separate violation of Title 18, United States Code, Sections 1347 and 2.

### COUNT 16 - 25

30.     Paragraphs 1 through 26 are incorporated by reference as though fully set forth in these Counts.

31.     In some instances, including but not limited to those specified in the following table, HOLLAND-KORNEGAY created and caused to be created certain false clinical psychotherapy notes that purported to document psychotherapy services rendered by her to refugee patients, and billed to NC-Medicaid.

32.     Therefore beginning at an exact time unknown, but no later than

January 2017, and continuing to a time unknown, but no earlier than June 2023, in the Eastern District of North Carolina and elsewhere, HOLLAND-KORNEGAY, knowingly and willfully made and used, and willfully caused to be made and used, materially false writings and documents, specifically, clinical documentation purporting to justify billed psychotherapy services, knowing the same to contain materially false, fictitious, or fraudulent statements, in connection with the delivery of and payment for the healthcare benefits and services described in the following table:

| COUNT | PATIENT INITIAL | DATE OF ALLEGED PSYCHOTHERAPY SERVICE IN NOTE | APPROXIMATE NOTE CREATION DATE |
|---|---|---|---|
| 16 | H.L. | 1/26/2017 | 5/28/2021 |
| 17 | H.L. | 4/9/2017 | 5/28/2021 |
| 18 | H.L. | 6/11/2017 | 5/28/2021 |
| 19 | H.L. | 7/19/2017 | 5/28/2021 |
| 20 | H.L. | 8/31/2017 | 5/28/2021 |
| 21 | N.Z. | 3/1/2017 | 5/24/2021 |
| 22 | N.Z. | 3/5/2017 | 5/24/2021 |
| 23 | N.Z. | 3/8/2017 | 5/24/2021 |
| 24 | N.Z. | 3/12/2017 | 5/24/2021 |
| 25 | N.Z. | 3/15/2017 | 5/24/2021 |

Each row in the foregoing table constituting a separate violation of Title 18, United States Code, Sections 1035(a)(2) and 2.

## COUNTS 26-33

## THE SCHEME

33.    Beginning at a time unknown, but no later than January 2017 and continuing to a time unknown, but no earlier than June 2023, in the Eastern District

of North Carolina and elsewhere, HOLLAND-KORNEGAY, defendant herein, devised and intended to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

34.     Introductory paragraphs 1 through 26 are realleged and incorporated as though fully set forth in these Counts.

35.     NC-Medicaid limited the number of psychotherapy visits available to a patient by a therapist under various circumstances.  To exceed this limited number of visits, NC-Medicaid required therapists to seek an authorization from NC-Medicaid's payment intermediary, Beacon Health Options, Inc. ("Beacon"), located in Virginia.  Such requests for authorization to bill for additional psychotherapy services were required to be supported by a service order justifying the medical necessity of the services.

36.     Various of HOLLAND-KORNEGAY's employees at OTC and Partners were only licensed as "associates", rather than fully licensed therapists.  Because these therapists were not fully licensed, they were unable to sign their own order of medical necessity.  In such instances, it was necessary for the authorization to include an order of medical necessity signed by a licensed medical professional, such as a doctor, physician assistant, or nurse practitioner.

37.     Rather than obtaining a genuine order of medical necessity, HOLLAND-KORNEGAY used fraudulent and photocopied orders in the names of a physician assistant and a nurse practitioner to obtain authorizations from Beacon.

38.     The physician assistant and nurse practitioner whose names and

signatures appeared on the fraudulent orders of medical necessity did not in fact personally examine and evaluate the refugee patients who were the subject of the orders.

39. Nevertheless, HOLLAND-KORNEGAY caused the fraudulent orders of medical necessity to be electronically transmitted from North Carolina to Beacon as part of the authorization process described above.

40. Beacon, in turn, relied upon the fraudulent orders in evaluating the medical necessity of the psychotherapy services requested by HOLLAND-KORNEGAY and her employee therapists.

41. Based upon the fraudulent orders of medical necessity and other documentation, Beacon authorized payment to OTC and Partners for psychotherapy services to be rendered to the refugee patients that were the subject of the fraudulent orders.

42. HOLLAND-KORNEGAY caused OTC and Partners to bill NC-Medicaid, and be paid by NC-Medicaid, for services authorized based upon the fraudulent orders of medical necessity.

MANNER AND MEANS

43. To carry out the scheme, HOLLAND-KORNEGAY caused a physician assistant and nurse practitioner to provide a signed order of medical necessity to HOLLAND-KORNEGAY.

44. HOLLAND-KORNEGAY created and caused to be created a generic, pre-signed copy of an order of medical necessity in the name of the physician assistant

and nurse practitioner.

45.     In some instances, HOLLAND-KORNEGAY caused to be created certain documentation that made it appear as though a physician assistant had referred a patient to OTC or Partners for treatment.   In fact, no such referral occurred.

46.     As a part of the authorization process for psychotherapy services for the refugee patients, HOLLAND-KORNEGAY caused the generic order of medical necessity to be filled out such that it appeared that a physician assistant or nurse practitioner had determined that the patient that was the subject of each order had a medical need for psychotherapy services.   In fact, the physician assistant and nurse practitioner had not evaluated the patient and did not sign the order of medical necessity for the patient.

47.     HOLLAND-KORNEGAY caused the fraudulent order of medical necessity to be transmitted to NC-Medicaid's payment intermediary, Beacon, along with other documents requesting the approval of psychotherapy services.

48.     HOLLAND-KORNEGAY caused OTC and Partners to receive payment for the psychotherapy services that were based upon the fraudulent authorization process described above.

<u>USE OF THE WIRES</u>

49.     On or about each of the dates listed in each row of the table below, in the Eastern District of North Carolina and elsewhere, the defendant, HOLLAND-KORNEGAY, for the purpose of executing the scheme described above, and

attempting to do so, caused to be transmitted by means of wire communication in interstate commerce certain signals and sounds, to wit, fraudulent service orders and supporting documentation seeking authorization for psychotherapy services from Beacon Health Options, Inc., a third-party NC-Medicaid vendor located outside of North Carolina, in Reston, Virginia, via the wire transmissions described in each row of the table below:

| COUNT | WIRE TYPE | WIRE DATE | PATIENT INITIALS | DATES OF SERVICE COVERED BY AUTHORIZATION | AMOUNT PAID UNDER AUTHORIZATION |
|-------|-----------|-----------|------------------|-------------------------------------------|---------------------------------|
| 26 | FACSIMILE | 11/18/2019 | A.K. | 11/18/2019 to 6/30/2020 | $3,107.62 |
| 27 | FACSIMILE | 11/18/2019 | M.B. | 11/18/2019 to 6/30/2020 | $3,161.64 |
| 28 | FACSIMILE | 11/18/2019 | U.T. | 11/18/2019 to 6/30/2020 | $2,987.94 |
| 29 | FACSIMILE | 1/30/2020 | A.M. | 1/30/2020 to 6/30/2020 | $1,058.97 |
| 30 | ONLINE PORTAL | 10/14/2020 | N.T. | 2/17/2021 to 6/27/2021 | $1,842.15 |
| 31 | ONLINE PORTAL | 10/14/20 | Z.T. | 2/17/2021 to 6/27/2021 | $1,802.64 |
| 32 | ONLINE PORTAL | 1/11/2021 | R.A. | 3/24/2021 to 6/25/2021 | $941.92 |
| 33 | ONLINE PORTAL | 1/17/2021 | R.R. | 4/10/2021 to 5/4/2021 | $605.52 |

Each entry in the foregoing table constituting a separate violation of Title 18, United States Code, Section 1343 and 2.

## COUNT 34

### THE CONSPIRACY

50.     Beginning at an exact time unknown, but no later than January 2017, and continuing to a time unknown, but no earlier than June 2023, in the Eastern

District of North Carolina and elsewhere, the defendant, HOLLAND-KORNEGAY and others, known to the grand jury, did knowingly combine, conspire, confederate, and agree with each other, to commit offenses against the United States, to wit:

(a) to knowingly and willfully execute and attempt to execute a scheme and artifice to defraud, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of NC-Medicaid, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits and services, in violation of Title 18, United States Code, Section 1347; and

(b) to knowingly and willfully make and use materially false writings and documents, knowing the same to contain materially false, fictitious, or fraudulent statements, in connection with the delivery of and payment for health care benefits and services involving NC-Medicaid, a health care benefit program as defined in 18 United States Code, Section 24(b), all in violation of Title 18, United States Code, Section 1035(a)(2).

<u>PURPOSE OF THE CONSPIRACY</u>

51.     It was the purpose of the conspiracy for HOLLAND-KORNEGAY and others to financially benefit by causing NC-Medicaid to be billed for services that were not rendered as billed, and by creating false clinical psychotherapy notes to support such billings.

## MANNER AND MEANS OF THE CONSPIRACY

52.     Introductory paragraphs 1 through 49 are realleged and incorporated as though fully set forth in this count.

53.     HOLLAND-KORNEGAY solicited and caused others to solicit individuals to fabricate clinical psychotherapy notes to support psychotherapy services that had already been billed to NC-Medicaid by OTC and Partners.

54.     In some instances, the individuals who were solicited to fabricate psychotherapy notes had no personal involvement with the patients who were the subject of the notes.

55.     In other instances, the individuals who were solicited to fabricate notes were not even employees of OTC or Partners and had no personal knowledge of the patients that were the subject of the notes.

56.     As requested, the conspirators fabricated the clinical psychotherapy notes that were given to them to create.

## OVERT ACTS

57.     A member of the conspiracy caused NC-Medicaid to be billed for a service that was not rendered as billed.

58.     A member of the conspiracy solicited at least one other individual to fabricate at least one clinical psychotherapy note for a service.

59.     A member of the conspiracy fabricated clinical psychotherapy notes for at least one date of service for at least one OTC or Partners patient.

60.     A member of the conspiracy transmitted at least one fabricated clinical

psychotherapy note to another conspirator.

61.    A member of the conspiracy paid another member of the conspiracy for the fabrication of at least one clinical psychotherapy note.

All in violation of Title 18, United States Code, Section 371.

**COUNT 35**

62.    Introductory paragraphs 1 through 61 are realleged and incorporated as though fully set forth in this count.

63.    On or about December 31, 2020, in the Eastern District of North Carolina and elsewhere, the defendant, HOLLAND-KORNEGAY, did commit an offense against the United States, to wit, to knowingly engage and attempt to engage, in a monetary transaction by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is specified in this Count, such property having been derived from a specified unlawful activity (SUA), that is Conspiracy to Commit Health Care Fraud, a federal healthcare offense as defined in Title 18, United States Code, Section 24(a)(2), in violation of Title 18, United States Code, Section 371.

64.    Specifically, on or about December 23, 2019, HOLLAND-KORNEGAY and W.K. purchased a residence located at 5401 23rd Ave S, Gulfport, FL, with a mortgage loan obtained through Truist, with an account ending in -8614.

65.    On or about December 31, 2020, an electronic payment of $19,000 was transmitted from Defendant's SECU account ending in -4801 to the Truist mortgage loan account ending in -8614.

All in violation of Title 18, United States Code, Section 1957.

## COUNT 36

66.     Introductory paragraphs 1 through 26, and 33 through 49 are realleged and incorporated as though fully set forth in this count.

67.     On or about January 17, 2021, in the Eastern District of North Carolina and elsewhere, the defendant, HOLLAND-KORNEGAY, did knowingly transfer, possess, and use, without lawful authority, a means of an identification of another person, to wit, the name and signature of B.L., a Physician Assistant, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, Wire Fraud, in violation of Title 18, United States Code, Section 1343, as charged in Count 33, knowing that said means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT 37

68.     Introductory paragraphs 1 through 26, and 33 through 49, are realleged and incorporated as though fully set forth in this count.

69.     On or about January 30, 2020, in the Eastern District of North Carolina and elsewhere, the defendant, HOLLAND-KORNEGAY, did knowingly transfer, possess, and use, without lawful authority, a means of an identification of another person, to wit, the name and signature of T.M., a Family Nurse Practitioner, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, Wire Fraud, in violation of Title 18, United States Code, Sections 1343, as alleged in Count 29, knowing that said means of identification belonged to another actual person.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT 38

70.     The allegations contained in Paragraphs 1 through 5 are realleged and incorporated as though fully set forth in this count.

71.     Between approximately December 7, 2016 and January 9, 2017 in the Eastern District of North Carolina, the defendant HOLLAND-KORNEGAY caused a loan application to be submitted to State Employees' Credit Union, a "financial institution" as that term is defined in Title 18, United States Code, Section 20.  The State Employees' Credit Union requested various information and documents during the loan application and underwriting process.

72.     In connection with the loan, HOLLAND-KORNEGAY, did knowingly make and cause to be made a false statement to State Employees' Credit Union, regarding her employment, specifically, a fictitious letter purporting to offer HOLLAND-KORNEGAY employment with OTC as the Clinical Director, and HOLLAND-KORNEGAY's signature accepting the purported offer of employment. In truth, and in fact, the letter was fictitious, in that HOLLAND-KORNEGAY was self-employed as the owner and operator OTC, rather than an employee of OTC.

73.     The State Employees' Credit Union disbursed loan proceeds in reliance upon the fraudulent document referenced above.

All in violation of Title 18, United States Code, Section 1014.

## FORFEITURE NOTICE

Notice is hereby given that all right, title and interest in the property described herein is subject to forfeiture.

Upon conviction of any Federal health care offense as defined in 18 U.S.C. § 24(a), the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the said offense.

The forfeitable property includes, but is not limited to, the following:

Forfeiture Money Judgment:

a) A sum of money representing the gross proceeds of the offense(s) charged herein against TASHA L. HOLLAND-KORNEGAY, in the amount of at least $5,079,200.08.

Real Property:

b) Real property having the physical address of 1702 Sheriff Watson Rd., Sanford, North Carolina, including any and all appurtenances and improvements thereto, being titled to TASHA L. HOLLAND-KORNEGAY and Husband, William O. Kornegay, II, and legally described in deed book 01451, pages 0307-0308 of the Lee County Registry, North Carolina, and any and all proceeds from the sale of said property.

c) Real property having the physical address of 5401 23rd Ave., S. Gulfport, Florida, including any and all appurtenances and improvements thereto, being titled to William Oscar Kornegay, II and TASHA L. HOLLAND-KORNEGAY, Husband and Wife, and legally described in deed book 20822, pages 1293-1295 of the Pinellas County Registry, Florida, and any and all proceeds from the sale of said property.

Personal Property:

a) One 2020 Mercedes 2500 Sprinter Van, VIN: W1W4EDHY3LT023638, titled to William Oscar Kornegay II

b) One 2019 Chevy Silverado Z71 Crew Cab Pickup Truck, VIN: 1GC1KSEG3KF264698, titled to TASHA L. HOLLAND-KORNEGAY and Kyree Edward-Joel Holland

c) Approximately $22,596.55 in funds seized from Charles Schwab Roth IRA Account No. XXXXXXXX2016, held in the name of TASHA HOLLAND-KORNEGAY

d) Approximately $9,016.85 IN FUNDS seized from Charles Schwab Roth IRA Account No. XXXXXXXX5749, held in the name of William Kornegay, II

e) Approximately $5,847.02 in funds seized from Charles Schwab Roth IRA Account No. XXXXXXXX7751, held in the name of TASHA HOLLAND-KORNEGAY

f) Approximately 3.16839504 ETH digital currency seized from Coinbase Account No. XXXXXXXX2550, held in the name of TASHA KORNEGAY

g) Approximately $6,236.64 in funds seized from Vanguard Account No. XXXXXXXX4296, held in the name of TASHA KORNEGAY and William Kornegay, II

h) Approximately $29,811.12 in funds seized from Truist Bank Account No. XXXXXXXX1007, held in the name of Our Treatment Center, PLLC

If any of the above-described forfeitable property, as a result of any act or omission of a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

MICHAEL F. EASLEY, JR
United States Attorney

BY: *[signature]*

TASHA C. GARDNER
Special Assistant United States Attorney